ROLLIN E. TALBERT, Administrator of Estate of CLYDE N. LILLARD, v. CHICAGO, ROCK IS-LAND & PACIFIC RAILROAD COMPANY, Appellant.

In Banc, May 21, 1926.

1. **PLEADING: Office of Reply: New Cause of Action.** A plaintiff cannot introduce in his reply a cause of action different from that stated in his petition; if the petition does not state facts sufficient to constitute a cause of action, a reply cannot cure it by supplying

Talbert v. Chicago, Rock Island & Pac. Railway Co.

the necessary allegations. Where the specific negligence charged in the petition as the basis of liability was that the roadbed of the railroad track was rough, uneven, soft and spongy, and that in consequence thereof, when the brakeman stepped between the rails in the performance of his duty to adjust and open the coupling knuckle on a moving car, he lost his footing and was thrown down by the car and under its wheels, the plaintiff cannot by his reply allege that the car was not equipped with couplers coupling automatically by impact, and that the lack of such automatic coupler, making it necessary for the brakeman to go between the ends of the cars, contributed to his injuries, and that by reason of such facts the pleas of contributory negligence and assumption of risk are unavailing.

2. ———: Automatic Couplers: Safety Appliance Act. Where the petition fails to allege that the moving car, whose coupler the brakeman was attempting to adjust when injured, was not equipped with automatic couplers in compliance with the act of Congress, a recovery cannot be had by evidence tending to prove the coupler was defective. If the petition fails to allege that the moving car which struck him was not equipped with automatic couplers it must be taken as conceded that it was so equipped, and, hence, that the brakeman's conduct in going between the rails in front of the moving car to effect the coupling was violative of the Safety Appliance Act of Congress.

3. DEFECTIVE TRACK: Automatic Coupler: Safety Appliance Act. The Safety Appliance Act of Congress does not impose upon an interstate railroad the duty of maintaining the roadbed of its switch tracks in a reasonably safe condition for the use of brakemen in adjusting the automatic coupler of a moving car, nor the duty to anticipate the presence of a brakeman between the rails of a switch track in front of a moving car.

4. ———: ———: ———: Instruction. An instruction cannot be broader than the pleadings, nor can there be negligence where there is no duty to perform. The act of a brakeman in entering on a railroad track between the rails for the purpose of adjusting or re-aligning the automatic coupler of a moving car is forbidden by the Safety Appliance Act of Congress, and the condition of the roadbed between the tracks is no concern of the brakeman. And where the petition bases plaintiff's right to recover on an allegation that the roadbed was soft, loose and spongy, whereby the brakeman lost his footing and fell and was run over by the car, an instruction making it the duty of the brakeman to go upon the track in front of the moving car to adjust the automatic coupler, so that it would couple by impact, and authorizing a verdict for plaintiff if the defective condition of the coupler contributed to his injury, is error.
314 Mo.—23.

5. **DEFECTIVE COUPLER: Moving Car: Adjustment: Common Practice of Brakemen: Waiver: Safety Appliance Act.** A positive mandate of a statute cannot be waived. The Safety Appliance Act of Congress, enacted for the express purpose of guarding interstate railroad employees from the danger incurred in coupling cars and requiring them to be equipped with couplers coupling automatically by impact, forbids brakemen to enter upon a switch track between the rails for the purpose of adjusting a drawbar supposed to be out of alignment, and that inhibition cannot be waived, although the company may waive its rule forbidding employees from going between moving cars to couple or uncouple them; and although it had become the common practice of brakemen to disregard this company rule, that practice did not make it the duty of a brakeman to enter upon the roadbed in front of a moving car to so re-align the coupler that it would automatically couple with the next car, nor authorize an allegation or instruction making such to be his duty.

6. **EVIDENCE: Res Gestae.** Spontaneity is the test of *res gestae;* where the casualty is itself speaking through the injured man his statements are competent evidence. A witness did not see the brakeman run down by the moving freight car; he saw the conductor give a frantic signal, and seeing it he ran to the brakeman and, with the aid of others, pushed the car off him; blood was running from the brakeman's mouth, he took his head off the rail and while holding him someone asked him how the car come to catch him, and he replied: "I went to throw the knuckle back and line the drawbar, and my feet sunk in the dirt there, and I, stumbled. and it caught me." *Held,* competent as part of the *res gestae.*

7. **RAILROAD COMPANY: Receivership: Return of Property: Right to Sue.** A receiver was appointed for the defendant railroad company by the United States court, and an order made requiring all persons having claims against the company to present and file them not later than a given date, and written notice of the order was served on plaintiff, but he failed to file the claim on which this action, previously brought, is based. He was not a party to the receivership proceedings. Afterwards the receivership was lifted, and the properties were returned to the company, and thereafter the suit, previously brought, was tried. *Held,* the decree of the court purporting to absolve the company from liability for claims of creditors not proven pending the receivership, was a nullity, being clearly in excess of the court's jurisdiction, and plaintiff's failure to file his claim before the special master therein is in no sense a bar to his present action.

Corpus Juris-Cyc. References: **Evidence,** 22 C. J., Section 543, p. 452, n. 59, 60; Section 549, p. 461, n. 89, 90, 91; p. 462, n. 96; Section 553, p. 465, n. 75. **Master and Servant,** 39 C. J., Section 562, p. 447, n. 42. **Pleading,** 31 Cyc., p. 255, n. 22, 25, 26. **Railroads,** 33 Cyc., p. 725, n. 51 **New. Trial,** 38 Cyc., p. 1615, n. 19, 21.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson,* Judge.

REVERSED AND REMANDED.

*Luther Burns, Guthrie & Conrad* and *Hale Houts* for appellant.

(1) The court erred in failing to direct a verdict for defendant on account of the receivership. (a) The court was without jurisdiction and plaintiff was barred from recovery by reason of the receivership, plaintiff's failure to file and present his claim therein, and the final decree entered in said proceeding. Phipps v. Ry. Co., 284 Fed. 945; Chicago, R. I. & P. v. Lincoln Comm. Co., 284 Fed. 955. (b) The failure of the court to recognize the receivership, and the decree therein rendered, was a failure to give full faith and credit under Sec. 1, Art. 4, Constitution of the United States. Supreme Lodge K. P. v. Meyer, 44 Sup. Ct. Rep. 432; Hancock Natl. Bank v. Tarul, 176 U. S. 640; Embry v. Palmer, 107 U. S. 3. (c) The judgment tends to deprive defendant of its property without due process of law, in violation of Article 5 of the Amendments to the Constitution of the United States, and Sec. 30, Art. 2, Constitution of Missouri. (2) Defendant's peremptory instructions should have been given for the reason that under the pleadings and the evidence deceased's injury was not due to actionable negligence on the part of defendant. (a) Defendant owed deceased no duty in regard to the maintenance of the roadbed at the point in question, and the condition of the roadbed was not the proximate cause of deceased's injury. (b) If deceased had no right to be in front of the moving car, if his presence there was due to his negligence, defendant was under no duty to anticipate it and the condition of the track was not the proximate cause of his injury. State ex rel. v. Ellison, 271 Mo. 472; Pankey v. Ry., 180 Mo. App. 197; Nelson v. Southern Ry., 246 U. S. 253. (c) Deceased had no

right to be upon the track in front of the moving car. Because in going there he violated Section 2 of the Safety Appliance Act. Gilbert v. Railroad, 128 Fed. 535; C. & O. Ry. v. Charlton, 247 Fed. 34. Because he violated defendant's rule. Francis v. Railroad, 110 Mo. 395; Flack v. Ry. Co., 285 Mo. 49; Great Northern Ry. v. Wiles, 240 U. S. 444; McCalmont v. Ry., 273 Fed. 231; Patterson v. Director General, 105 S. E. 746. Because he unnecessarily placed himself in a position of peril. Pankey v. Ry. Co., 180 Mo. App. 185. (d) The negligence of deceased in going in front of the car was the sole proximate cause of his injury. Flack v. Railroad Co., 285 Mo. 49; McCalmont v. Ry., 273 Fed. 231; Patterson v. Director General, 105 S. E. 746. (3) The court erred in admitting testimony of the statement made by deceased after his injury. Prior v. Payne, 263 S. W. 985. (4) The court erred in giving plaintiff's instructions numbered 4 and 5. (a) To submit the issue of whether there was a violation of the Safety Appliance Act by defendant permitted a departure, since the allegation of such violation was first made in plaintiff's reply. Ham v. Ry., 149 Mo. App. 200; Mathieson v. Ry., 219 Mo. 542. (b) The submission of the issue was improper for the reason that there was no evidence that the coupler was out of alignment so as to prevent a coupling by impact. St. L. & S. W. Ry. Co. v. Bounds, 244 S. W. (Tex.) 1102; State ex rel. v. Cox, 298 Mo. 433; Yarnell v. Ry. Co., 113 Mo. 579; Guthrie v. Holmes, 272 Mo. 215.

*Rosenberger, McVey & Freet* for respondent.

(1) The opinion in division entirely overlooks the established rule that, after verdict, where no question has been raised at the trial, and exception saved, every reasonable intendment and inference is given to the petition and the evidence in favor of the judgment, and that all defects are cured by the verdict, save only that the petition does not state a cause of action. Bliss on

Code Pleading, sec. 437; State ex rel. v. Webb, 177 Mo. App. 60; Oglesby v. Ry. Co., 150 Mo. 137; Lee v. Ry. Co., 195 Mo. 400; Dodge v. Coal Co., 115 Mo. App. 501; Powell v. Sherwood, 162 Mo. 605; Duerst v. St. Louis S. Co., 163 Mo. 607. (a) A general plea of negligence, whether in the petition or answer, is sufficient, without specifying the particular acts, unless objected to by motion or otherwise before trial. Geninazza v. Auction Co., 252 S. W. 417; Pattison on Code Pleading (2 Ed.) sec. 1026. The petition charged that "Lillard, in the discharge of his duty and in the exercise of ordinary care, stepped upon the roadbed and track for the purpose of adjusting and opening said coupling knuckle on said ballast car." This is sufficient even though a conclusion. (b) An issue raised on the statement of a legal conclusion, which presents the real point in controversy, will be regarded as sufficient after verdict. Jackson v. Ry. Co., 80 Mo. 147; Nicholson v. Ry. Co., 82 Mo. 75; Salmon Falls v. Leyser, 116 Mo. 51; Nabe v. Schuellman, 254 S. W. 731; Lockhart v. Moss, 53 Mo. App. 637; Slaughter v. Slaughter, 106 Mo. App. 104; Young v. Prentice, 105 Mo. App. 563; Geninazza v. Auction Co., 252 S. W. 417. (c) If a matter material to plaintiff's cause of action be not expressly averred in the petition, but be necessarily implied from what is expressly stated therein, the defect is cured after verdict. Hurst v. City of Ash Grove, 96 Mo. 168; State v. Gromer, 252 S. W. 705; Williams v. Ellis, 239 S. W. 157.; Black v. Crowther, 74 Mo. App. 480; Davis v. Watson, 89 Mo. App. 27; Snyder v. Electric Co., 223 S. W. 911; Schubach v. McDonnell, 179 Mo. 163; Stivers v. Horne, 62 Mo. 473; Coulter v. Coulter, 124 Mo. App. 149; 31 Cyc. 714. (d) Even if there was a departure, it is too late to complain of it after verdict. Mortland v. Holton, 44 Mo. 58; Sec. 1550, R. S. 1919; Bank v. Assurance Co., 106 Mo. App. 114. (2) There is no presumption to be read into the petition, under the circumstances in this case, that the cars were equipped with automatic couplers. The presumption of right acting on the part of the railway company is rebutted by

the presumption of due care and right acting on the part of the deceased. Yarnell v. Ry. Co., 113 Mo. 579; Buesching v. Gaslight Co., 73 Mo. 233. (3) The petition fairly presents a cause of action, based upon the Federal Employers' Liability Act (35 U. S. Stat. 65). The answer met the issue by pleading contributory negligence and assumption of risk, and the reply pleaded a violation of the Safety Appliance Act, so that "plaintiff had a right to show that the cars were not equipped with automatic couplers, not for the purpose of showing additional negligence, but for the purpose of showing that it was necessary for Lillard to go between the cars." (4) Both the Commissioner and appellant's counsel are grossly in error in stating that the plaintiff's own witness testified that the coupler was in perfect order, and in stating that the testimony of the company's witness to the same effect is uncontradicted, and in stating that there was no evidence tending to prove that the coupler would not act automatically by impact or that it was out of alignment. There is no presumption to be read under the circumstances in this case, that the cars were equipped with automatic couplers. (5) The question of proximate cause is not in the case on this appeal. Federal Employers' Liability Act, 35 U. S. Stat. 65; Annotation, 8 Fed. Stat. Ann. 1208; Spokane Ry. Co. v. Campbell, 241 U. S. 497; Grand Trunk Ry. Co. v. Lindsay, 201 Fed. 836; L. & N. Ry. Co. v. Weine, 202 Fed. 887. (6) Plaintiff's Instruction 4 was sound, and the inharmonious criticisms of the divisional opinion are not warranted. Defendant's Instruction R is vicious, in that it attempts to deny the right of the jury to base their verdict in any part, on the defective coupling apparatus.

HIGBEE. C.—This is an action for damages for the killing of Clyde N. Lillard, a single man, aged twenty-three, brought in December, 1914, by the administrator of his estate, under the Federal Employers' Liability Act, for the benefit of his dependent mother, his only surviving parent. Lillard was a brakeman on a local

freight train on a branch line of defendant's railway, and was killed on January 8, 1914, at Walter, Oklahoma, while engaged in interstate commerce, the company being an interstate commerce carrier. The case was tried to a jury at the January term, 1922, resulting in a verdict for plaintiff for $10,000 on the first count, and $2,-000 on the second count. The first count charges negligence as follows:

"Said injury was sustained as follows: At the time he sustained said injury said Lillard was employed as a brakeman on defendant's north-bound local freight train No. 782 and was discharging his duties as such in the switching yards of defendant at the town of Walter, Oklahoma. Upon the arrival of said train at Walter on said day it became necessary for the train crew of said train of which said Lillard was a member, to do certain switching, that is, to set out certain cars, to pick up certain other cars and to rearrange the order of said cars in said train; to this end the cars were pulled out upon the main line beyond and north of a certain switch in said yards and then said cars were backed or 'kicked' south over and upon said switch so as to distribute said cars upon the various tracks leading from the main line; said operation of kicking was accomplished by detaching certain cars from the rest of the train and engine, and by the engine then giving said cars a shove or push, causing them to run by their own momentum over said switch and upon the track desired; at the time in question certain cars had been kicked south from the main line over said switch and upon what was called the passing track and said cars had just come to a standstill on said passing track when a certain ballast car was also kicked upon said passing track with the intention that it shoud couple by its own momentum with said other cars on the passing track; in order that the ballast car would couple with said other cars it was necessary for the knuckle or the coupler thereon to be open when the cars should come together; while said ballast car, kicked as aforesaid, was slowly moving

south on said passing track toward said cars to which it was to be coupled said Lillard in the discharge of his duty and in the exercise of ordinary care, stepped upon the roadbed and track between the rails for the purpose of adjusting and opening said coupling knuckle on said ballast car and just as he had done so and while he was in the act of stepping off the track he, by reason of the dangerous, unsafe and defective condition hereinafter described of defendant's said roadbed and track, was caused to lose his footing and to fall and before he could recover his footing he was thrown down by said moving car, thrown under its wheels, and so mortally mangled and maimed that he died about one hour afterward. Said injury was directly caused by the careless and negligent construction and maintenance by defendant of its track and roadbed at this particular place where said Lillard fell and was injured, whereby said track and roadbed had through defendant's negligence become defective, unsafe, dangerous and insufficient, in this, that the ties and rails of the track at said place were laid upon the soil without any ballast under, over or between the ties and that defendant negligently permitted the ties to become buried and sunken about six inches below the surface of the ground and defendant had negligently permitted the soil between the ties to bulge upward so as to create ridges or hummocks of loose, spongy soil reaching almost as high as the top of the rails and extending across the track, with depressions between said ridges and that the surface of said track and roadbed while apparently hard, firm, solid and sufficient to sustain a man's weight, was in reality of loose and spongy soil, rough and uneven, deceptive in appearance and afforded a treacherous footing, causing said Lillard when he went thereon to sink therein and causing him to lose his footing as aforesaid; that said condition of said track and roadbed at said place made the same dangerous, deceptive, unsafe and insecure, which condition was known to defendant or by the exercise of ordinary care could have been known to defendant for a long time

before said Lillard was injured but defendant negligently failed to repair or remedy the same.''

The second count ''adopts and makes a part hereof paragraphs 1 to 5 of the first count,'' then describes the injuries inflicted on the deceased and prays judgment for his conscious sufferings.

The second amended answer is: 1, a general denial; 2, a plea of contributory negligence; 3, a plea of assumption of risk, and 4, that the court is without jurisdiction for that on April 20, 1915, a petition was filed by an unsecured creditor of the company in the United States District Court, at Chicago, praying the appointment of a receiver of the company's property with the usual powers. An order was accordingly made, appointing a receiver and a special master and an order was made requiring all persons having claims against the company to present and file their claims not later than July 14, 1917; otherwise, they would be barred from participating in the property of the company; that public notice be given of the time and place within which such claims might be proved by publication in a newspaper; that written notice thereof was accordingly served upon plaintiff's attorney of record and publication was duly made; that plaintiff failed to file any claim; that defendant acquired the property and assets in the possession of said receiver and owned by it prior to said receivership under and by virtue of a plan of reorganization approved by said court in said decree; that by said decree the defendant acquired its said property and assets which were subject to the orders of the court in said receivership proceedings and ''that in no event can defendant be made liable for plaintiff's claims herein since the same was not filed before said special master as was provided in said decree.'' The answer then avers that to permit plaintiff to prosecute his action would deprive defendant of property without due process of law and deny it the equal protection of the law, in violation of certain sections of the Constitution of the United States and of the Constitution of Missouri, etc.

The reply is a general denial and then proceeds:

"For further reply, plaintiff states that the ballast car mentioned in his petition, at the time plaintiff's intestate was fatally injured, was being hauled and used by defendant in moving interstate traffic, and was not equipped with couplers, coupling automatically by impact, and which car could not be coupled or uncoupled without the necessity of men, including said intestate, going between the ends of the cars, whereby it became necessary for said intestate to go between the cars, as described in plaintiff's petition, all of which contributed to cause said injuries and death, and was in violation of the Act of Congress in such case made and provided; and that by reason of the premises the pleas of contributory negligence and assumption of risk set up in defendant's answer are not available to it."

Paragraph 3 denies the right or power of the court to make the decree in the receivership proceedings absolving the defendant from liability for plaintiff's demand.

Appellant's statement reads in part:

"The evidence was sufficient to show that the roadbed between the rails of the passing track, at the point in question, was uneven, soft and spongy, substantially as alleged in the petition, and had been in such a condition for some time, and that it was an unsafe footing for one walking in front of a moving car between the rails. The evidence was also sufficient to show that deceased was caused to fall, or be thrown, upon the rail, by reason of the fact that one foot sank into the soft earth of this roadbed. Also that he was employed in interstate commerce at the time."

Archie W. Whitehead, who was employed by the company as a section hand at the time of this accident, was a short distance north of the ballast car that ran upon and killed Lillard, and, seeing the conductor's frantic signal and hearing screaming, he ran to the end of the car and, with the assistance of others, pushed it off Lillard's body. Witness was then asked:

"Q. What, if anything, did you do, after you pushed the car off him? A. I stooped down, the blood run out of his mouth, and he couldn't, it looked like, hold his head off the rail, and I stooped down on my knees and took his head in my hand like that (indicating), and sort of held his head up off of the rail.

"Q. I will get you to state, Mr. Whitehead, if Mr. Lillard said or done anything while you were holding his head there? A. Someone asked him how it came to catch him, how did it happen, something to that effect, and he says, 'I went to throw the knuckle back and line the drawbar, and my foot sunk in the dirt there, and I stumbled, and it caught me.' Now, as well as I remember, that is what he said."

This evidence was admitted over the defendant's objection that it was hearsay.

Whitehead and other witnesses for plaintiff testified it was a common occurrence for brakemen to step in front of slowly moving cars to adjust the knuckles or straighten the drawbars; "they all do it;" they never saw a brakeman violate the rule, however, in the presence of a superior officer.

On cross-examination one of plaintiff's witnesses testified that on the morning after the accident he examined the automatic coupler on the ballast car in question and found that it worked perfectly.

R. C. Saunders, conductor of the local freight train, was the only eye witness to the tragedy. He testified, in behalf of the company, that the train was late and they were in a hurry; that, after working the freight, the crew began the switching. Witness was at the north end of a car standing on the passing track when he saw the ballast car coming down the track. He stepped between the rails and with his hand opened the knuckle of the car by which he was standing. He then saw Lillard step between the rails about twenty-five feet north of witness and take hold of the drawbar of the ballast car with his hands, in the position of opening the knuckle. Lillard walked with the car, facing the south; his foot

went down into the earth and he stumbled and fell under the car on the rail, and the car ran onto him. When Saunders saw Lillard step between the rails he called to him to look out; to be careful; that the wheel was close to his feet. The car was running three or four miles per hour.

Witness identified Rule 702 of the company prohibiting employees from going between moving cars to couple or uncouple same; that, if there be any doubt about coupling with the lever from the outside, the cars must be stopped before one goes between them or attempts to couple by hand at the drawhead. It was shown that Lillard had receipted for a copy of the rules on entering the company's service.

Saunders testified that he examined the drawbar on this ballast car within a few minutes after the accident and found no defect in it or in its alignment; that it had about two inches lateral play to allow for taking curves. He further testified there could be, trouble in coupling cars, due to the alignment of the drawbar, where there is no defect; that is, if the track is not absolutely level or not perfect, the drawbars might not make. If they fail to couple the practice is for the brakeman to wait until the cars stop. In many cases after the knuckle is open it is necessary to adjust it with the hands in order to bring about the right impact to make the coupling. Brakemen frequently step in front of slowly moving cars to open and adjust knuckles; they have done it in my presence. In order to make a coupling the drawbar should be in line and the knuckle open; if it is too far out of alignment it is usually adjusted by hand. If the drawbar is out of line on a moving car and the couplers won't work, it is usual to let the cars come together and strike. If they don't couple we go ahead with the work until it is finished and then make that coupling by pulling ahead and shoving back. It would not take more than two or three minutes.

In rebuttal it was shown that the end of the ballast car had been jammed and a buffer plate cracked and that

in consequence, when the car was on a rough, uneven track, the drawbar might have so much lateral play that a coupling could not be made by impact, but there was no evidence tending to show that the drawbar was out of alignment at the time Lillard was injured.

At the close of the evidence, the court overruled defendant's demurrer to the evidence. By plaintiff's instruction numbered 3 the court directed the jury if they found the facts to be as predicated in the petition, their verdict should be for the plaintiff. This is also assigned as error.

I. The specific negligence charged in the petition as the ground or basis of liability, is that the roadbed of the passing track where Lillard was injured was Pleading: rough, uneven, soft and spongy and that in conReply: sequence thereof, when he stepped between the Proof. rails in the performance of his duty to adjust and open the coupling knuckle on the ballast car, he lost his footing and was thrown down by the car and under its wheels while in the act of stepping off the track, and was mortally injured. It will be seen it is not charged in the petition that the company had failed to equip its cars used in moving interstate traffic with couplers coupling automatically by impact and which could be uncoupled without the necessity of men going between the ends of the cars, as required by Section 2 of the Safety Appliance Act of March 2, 1893, U. S. Compiled Statutes 1918 (Compact Ed.) sec. 8606. Liability is not predicated on failure to comply with the requirements of this act. However, by his reply, plaintiff avers that the ballast car by which Lillard was injured and killed was not equipped with couplers coupling automatically by impact, whereby it was necessary for said intestate to go between the ends of the cars, all of which contributed to said injuries and death and that by reason of the premises the pleas of contributory negligence and assumption of risk are not available.

In Moss v. Fitch, 212 Mo. 484, 502, 111 S. W. 475, Judge GRAVES, J., said:

"Under the codes the nature of replies are thus stated in 18 Ency. Plead. & Prac. 690: 'The office of a reply is to deny the facts alleged as defenses, and, while not abandoning the cause of action as originally pleaded, to fortify it by the new facts rendered necessary by the allegations of the answer.' At page 707, the same authority says: 'The plaintiff cannot introduce in his reply a cause of action different from that which he states in his complaint or petition; in other words, he cannot, after answer is made, abandon the cause of action set up in the complaint and make an entirely new cause of action in the reply. Where the complaint is defective or does not contain facts sufficient to constitute a cause of action, a reply cannot cure it by supplying the necessary allegations, nor can it in any manner enlarge, in ordinary cases, the claim for relief alleged in the complaint.'

"And if the reply contain matter inconsistent with the complaint it will be taken as surplusage. At page 708 of the same authority, the rule is thus stated: 'Where, in addition to new matter avoiding the answer and supporting the complaint, the reply contains surplus averments inconsistent with the complaint, the surplusage will be disregarded and is liable to be stricken out on motion.'

"These rules are supported by abundant authority.

"In Crawford v. Spencer, 36 Mo. App. l. c. 82, Judge THOMPSON said: 'A party must, under our system of pleading, recover upon the cause of action stated in his petition, and he cannot recover upon a cause of action stated in his reply. The provision of the statute above quoted was not, we think, intended to change the office of a reply, which is that of a denial or a confession and avoidance of matter set up in the answer.'

"SMITH, P. J., in Stepp v. Livingston, 72 Mo. App. l. c. 179, said: 'If it were disclosed by the record that

the plaintiff recovered on a cause of action stated in his reply, but not in his petition, it would be our duty to reverse the judgment.'

"And to the same effect is the language of JOHNSON, J., in Jackson v. Powell, 110 Mo. App. l. c. 252, wherein it is said: 'We agree with appellant that a plaintiff must recover upon the allegations of his petition, not upon a cause of action pleaded for the first time in his reply.' "

See also Jennings v. Cherry, 257 S. W. 438 (12), and Ham v. Railway, 149 Mo. App. 200, 130 S. W. 449; Daniel v. Pryor, 227 S. W. 102, 105.

As the petition fails to charge that the car was not equipped with automatic couplers in compliance with the act of Congress, it necessarily results that a recovery cannot be had under the pleadings by evidence tending to prove that the coupler was defective. It must be taken as conceded by the petition, for the purpose of this action, that the car was equipped with automatic couplers; hence Lillard's conduct in going between the rails in front of a moving car to effect the coupling was violative of the Safety Appliance Act. In construing that act, SANBORN, J., in Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 533, said:

"Let us apply these rules to the facts of this case. It is so dangerous for the employees of railroad companies to go between the ends of cars to couple or to uncouple them that Congress passed an act on March 2, 1893, which made it the duty of common carriers to equip all their cars engaged in moving interstate traffic with couplers which can be uncoupled 'without the necessity of men going between the ends of the cars' (27 Stat. 531, c. 196, 3 U. S. Comp. St. p. 3174), and the legislatures of many of the states have enacted laws of a similar nature to regulate carriers within their respective borders. In this way the duty was imposed upon common carriers by the law to so equip their cars that they could be uncoupled without requiring their servants to go between the ends of the cars. The devolution

of this duty upon the carriers necessarily imposed upon their servants the correlative duty of using the equipment thus furnished to them, and of refraining from going between the ends of the cars to couple or uncouple them unless compelled to do so by necessity.''

See also Chesapeake & O. Ry. Co. v. Charleton, 247 Fed. 34.

If we read the Safety Appliance Act into the petition it must be held that the company owed Lillard no duty to maintain the passing track in a reasonably safe condition for him to walk upon. His presence upon the track in dangerous proximity to the moving car was not to have been anticipated. Lillard's violation of the act, and not the condition of the roadbed, was the proximate cause of his injury. [State ex rel. v. Ellison, 271 Mo. 463, 472, 196 S. W. 1088; Nelson v. Southern Ry. Co., 246 U. S. 253, 38 Sup. Ct. Rep. 233; Pankey v. Ry. Co., 180 Mo. App. 185, 197, 168 S. W. 274; Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 36 Sup. Ct. Sup. 406; Flack v. Railroad, 285 Mo. 28, 49, 274 S. W. 415.]

In determining this question we cannot consider the evidence offered by the plaintiff as to the alleged defective condition of the couplers for the reason, as heretofore stated, that plaintiff cannot amend his petition by his reply and recover on a cause of action first declared upon in the reply. The court therefore erred in overruling the demurrer to the evidence and in giving plaintiff's Instruction 3. We will have something further to say on this point in the paragraph following.

II. By the fourth instruction the court, in substance, charged the jury that it was defendant's absolute duty, if engaged in interstate commerce, to equip its cars with couplers coupling automatically by impact without the necessity of men going between the cars, and if they found defendant negligent in the construction and maintenance of its track at the place where Lillard was injured, as defined in Instruction 3, and that the drawbar on the ballast car was out of alignment with the coup-

ling of the car to which it was to be coupled and would not couple by impact, and that it was necessary for Lillard to go, and he did go, between the ends of the cars to adjust the knuckle of the ballast car, and that such defective condition of the coupler contributed to Lillard's injuries, then Lillard did not assume the risk of being injured by going upon the track between the ends of the cars to make the coupling, and if you so find, then even though the jury might further believe that in or while doing so, Lillard was guilty of negligence contributing to his injury, such contributory negligence would not constitute any defense to this suit, in whole or in part.

In the opening statement to the jury, plaintiff's counsel said: "Mr. Lillard, as I have said, was a brakeman on this train and it became his duty to make the coupling. He was standing there by the side of the passing track, on the east side of the passing track watching these men, knowing that when this car was pushed back to step in at the right time and make the coupling. He was about thirty-five feet north of the standing—of the car—of the last car that was standing on the passing track at the time he attempted to make this coupling. As he looked back and saw the car coming toward him by its own momentum, without any control except such as he might give it, he looked back and saw that the coupler attached to the drawbar was out of line. It will be shown to you that when the coupler is out of alignment it will not couple automatically, and that then the only way that the coupling can be made is for the man to step in front of the car and push the coupler into line, so that it will engage with the coupler on the standing car. As this car approached him, and when he saw it was out of line and stepped in to line up that coupler and adjust it, that car was moving just about as fast as a man could walk."

The court refused defendant's Instruction R, which reads: "The jury is instructed that plaintiff does not seek a recovery in this case on the ground that the de-

314 Mo.—24.

fendant was negligent in the kind or character of coup-
lers with which the car was equipped which injured
Clyde Lillard, as shown by the evidence, or on account
of any defects therein, and you cannot base a verdict
for the plaintiff on such negligence, if any.''

It is apparent that the jury would understand from
counsel's statement and from Instruction 4, that defend-
ant's primary negligence was its alleged failure to equip
the ballast car with automatic couplers and that in conse-
quence thereof Lillard was required to go between the
rails to effect a coupling. Counsel, however, say they
used the failure so to equip the car as a shield and not
as a sword. But this specious plea cannot alter the fact
that if the coupler provided would act automatically by
impact there was no call for the brakeman to go between
the cars; that such act was forbidden by the Safety Ap-
pliance Act and the condition of the roadbed between the
rails of the passing track was a matter of no concern to
Lillard and is unimportant in the consideration of this
case. ''There can be no negligence without there being
some duty to be performed toward the injured party.''
[Degonia v. Railroad, 224 Mo. 564, 597, 123 S. W. 807.]
The real issue on which the case was tried, as the jury
would understand it and, in fact, as the case was sub-
mitted, was not within the averments of the petition.
Instruction 4 broadened the issues. In the Degonia case
(at page 589) it is said: ''But, further, an instruction
cannot be broader than the pleadings, although the ev-
idence may take a wider range, nor on the other hand
can the instruction be broader than the facts proven, al-
though the pleadings may take a broader range. In
other words the instructions must be within the purview
both of the pleadings and the evidence.'' See also
State ex rel. v. Ellison, 270 Mo. 645, 653, 195 S. W. 722,
and Daniel v. Pryor, supra.

III. Again, as has been indicated, there was no ev-
idence tending to prove that the coupler would not act
automatically by impact, nor that it was out of align-

ment and required the brakeman to go between or in front of moving cars to re-align the drawbar or **Waiver: Common Practice.** open the knuckle. The couplers were of standard construction. The testimony of plaintiff's own witness, that the coupler was in perfect order, as well as the testimony of the company's witnesses to the same effect, is uncontradicted. The testimony offered by plaintiff's witness in rebuttal was that under the conditions shown by the evidence the drawbar might have had so much lateral play as to require adjustment by hand, is merely speculative. In fact, from the evidence, there can be little doubt that Lillard's unfortunate action in going in front of the moving car was prompted by the common practice of brakemen in disregard of the positive rule of the company. The company may have waived the rule but the Act of Congress enacted for the express purpose of guarding employees from the danger incurred in coupling cars with the old style of couplers, stands on a different footing; the mandate of the law cannot be waived or disregarded.

IV. In the event of a retrial of this case it is proper that we indicate our views in reference to other questions raised in the record. Appellant contends that the statement made by Lillard to Whitehead was a mere narrative of a past event and should have been **Res Gestae.** excluded as hearsay. In support of this contention counsel cite Pryor v. Payne, 263 S. W. 985. The witness did not see Lillard run down by the car. The conductor, Saunders, did see him fall on the rail before the moving car and immediately gave a frantic signal. Whitehead, who was nearby, seeing the signal and hearing Lillard's screams, ran to him and, with the aid of others, pushed the car off him. Lillard continued screaming. The blood was running from his mouth. Whitehead stooped down and lifted Lillard's head off the rail and, while holding his head, someone asked Lillard how the car came to catch him, and the statement heretofore set out was made. We think it was clearly competent as a

part of the *res gestae*, within the ruling of the Pryor case. The declaration need not be contemporaneous with the injury. Lillard's body was mangled; he was still screaming and blood issuing from his mouth. There was no opportunity for fabricating a story. The thing itself, the casualty, was speaking through the injured man. Spontaneity is the test; it need not be, indeed in few cases can it be, "precisely synchronous." [22 C. J. 452. See also State v. Gilreath, 267 S. W. 880.]

V. The court properly instructed the jury that the receivership proceedings and the orders and decrees read in evidence constituted no defense and all evidence touching the same was withdrawn from their consideration. The plaintiff was not a party to those proceedings. When the receivership was lifted, the company received back all its property. The decree purporting to absolve the company from liability for claims of creditors not proven was a nullity, a mere *brutum fulmen*, being clearly in excess of the court's jurisdiction. This question has been so fully considered by our Court in Banc, in Stuart v. Dickinson, 290 Mo. 516, 235 S. W. 446; Sherman v. International Life Ins. Co., 291 Mo. 139, and International Life Ins Co. v. Sherman, 262 U. S. 346, 43 Sup. Ct. Rep. 574, and held to be without merit, that it is unnecessary to give it further consideration.

The judgment is reversed and the cause remanded.

PER CURIAM:—This case coming into Court in Banc, the foregoing opinion of HIGBEE, C., filed in Division Two, is adopted as the opinion of the court. *Blair, C. J., Walker, Graves* and *Otto, JJ.,* concur; *Ragland, White* and *Atwood. JJ.,* dissent.