JOHN W. WILLIAMSON, Administrator of the Estate of RUSHTON E. HALBERT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.—74 S. W. (2d) 583.

Division One, September 18 1934.*

*NOTE: Opinion filed at May Term, 1934, June 12, 1934; motion for rehearing filed; motion overruled at September Term, September 18, 1934.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellant.

*N. Murry Edwards* and *Robert A. Harris* for respondent.

GANTT, J.—Action under the Federal Employers' Liability and Safety Appliance Acts to recover damages for the widow and minor child of Rushton E. Halbert who was injured at two A. M. and died at nine A. M. on February 27, 1930, while working as a switchman for defendant in its railroad yard at Memphis, Tennessee.

The petition charged a violation of the Safety Appliance Act with reference to automatic couplings, and further charged that said violation was the proximate cause of the death of Halbert. The answer was a general denial. Judgment for plaintiff for $25,000. Defendant appealed.

Defendant contends that there was no substantial evidence tending to show a violation of said act, and further contends that if there was such evidence said violation was not the proximate cause of Halbert's death. In other words, it contends for a directed verdict.

It was admitted that defendant and deceased were, at the time, engaged in interstate commerce.

There was evidence tending to show the following: The tracks run north and south in said yard. The injury to Halbert

resulted from a switching movement on the storeroom track leading from track No. 1. They were straight and level tracks. At the time six cars were standing on the storeroom track. The car on the north end of the six standing cars was a loaded Missouri Pacific box car. An engine headed north with five cars coupled to its tender was north of the six standing cars and on the same track. The car on the south end of the cars coupled to the engine was a loaded Frisco box car. The movement was to back the engine and cars and couple the Frisco car to the Missouri Pacific car. If in good condition, drawbars will couple automatically if the knuckle of one drawbar is open, or if the knuckle of both drawbars are open. In this case the knuckle of the Frisco drawbar was closed, but the knuckle of the Missouri Pacific drawbar was open. It was the duty of Halbert to make this coupling. On a signal from him the engineer backed the engine and cars. After the engine and cars were backed four or five car lengths, and when the Frisco car was within a car length of the Missouri Pacific car, Halbert, who was on the ladder on the east side of the moving Frisco car and at the south end of said car, gave the engineer a "slow down" signal and continued to so signal until the engine and cars were moving "real slow" and near the standing cars. At that time Halbert stepped from the ladder to the ground and walked south about ten feet. He and his lantern then disappeared. Thereupon the engineer applied the emergency brake to the engine and stopped the engine and cars. While the engine and cars were backing south, the foreman of the crew was walking south on the east side of the six standing cars. On reaching the south end of said cars he turned and looked north but did not see Halbert. He saw that the engine and cars were not moving. After waiting thirty seconds he walked to the north end of the six standing cars. He there saw that the cars had not coupled, and that the distance between the drawbars of said cars was ten or twelve inches. He found Halbert between the rails of the track in a stooped position and facing south. He was not directly under the Missouri Pacific drawbar but was a little to the west and his body was twelve inches from said drawbar. His left chest and shoulder had been crushed. There was no blood or flesh on the rails, track or wheels of the cars. He was unconscious and so remained until his death. He had been in railroad service for five years, was five feet, seven inches tall and weighed one hundred thirty pounds.

The Missouri Pacific car was "tagged" on the east side of and at the north end of said car as a "bad order car." Its north end drawbar was about four inches lower than the standard height of the drawbar of an empty car. The load in the car might tend to lower the drawbar about an inch. It being about four inches lower than the standard height would give it more than normal lateral movement and might cause it to be in a twisted position. If said

drawbar had moved laterally from its normal position or was in a twisted position it would not couple automatically by impact without adjustment. An experienced switchman could determine, by observation, if said drawbar needed adjustment. If it needed adjustment, it would be necessary for him to go between the cars to make the adjustment. A drawbar weighs about three hundred fifty pounds.

From this evidence it may be inferred that Halbert, from observation, determined that the Missouri Pacific drawbar was either laterally in such a position that it would not automatically couple, or that said drawbar was twisted and for that reason would not so couple.

It also may be inferred that he went between the cars to adjust the defective drawbar; that he stooped and with his left chest and shoulder proceeded to adjust the drawbar, and that while so proceeding he was crushed between the drawbars of said cars. Indeed, no other inferences can be drawn from the evidence.

Thus it appears that there was substantial evidence tending to show that the Missouri Pacific drawbar would not automatically couple by impact, and that the defective condition of said drawbar was the proximate cause of Halbert's death.

Defendant cites cases as follows: Weekly v. Baltimore & O. Railroad Co., 4 Fed. (2d) 312; Talbert v. C. R. I. & P. Ry. Co., 314 Mo. 352, 370, 284 S. W. 499; Schendel v. Chicago, M. & St. P. Ry. Co. (Minn.), 206 N. W. 436; Fryer v. St. Louis-San Francisco Ry. Co., 333 Mo. 740, 63 S. W. (2d) 47, 1. c. 54, 55; Robison v. Chicago & Eastern Illinois Ry. Co., 334 Mo. 81, 64 S. W. (2d) 660; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333; Atchison, T. & S. F. Ry. v. Toops, 281 U. S. 351; Gulf, M. & N. Railroad Co. v. Wells, 275 U. S. 455; Shidloski v. Ry. Co., 334 Mo. 951, 64 S. W. (2d) 259, 262; Hamilton. v. Railway Co., 318 Mo. 123, 134, 300 S. W. 787; New York Central Railroad Co. v. Ambrose, 280 U. S. 486, 490; McGrath v. St. Louis Transit Co., 197 Mo. 97, 104, 94 S. W. 872. The facts ruled in those cases are different from the facts of the instant case.

Defendant directs attention to the testimony of the engineer that on the disappearance of Halbert and his lantern, he applied the emergency brake and stopped the engine and cars within four or five feet and before striking the six standing cars. In view of the location of Halbert's injury and his position after the injury, this testimony is unbelievable.

Defendant also directs attention to evidence tending to show that about eight A. M. that morning the Frisco car and the Missouri Pacific car coupled automatically by impact three different times. The weight to be given this evidence was for the jury. Furthermore, it may be inferred that the drawbar was adjusted by Halbert before or at the time of the impact resulting in his injury,

■ Defendant next complains of the admission of evidence given by an expert witness as follows:

"MR. EDWARDS: (Q.): Now, will you tell the jury, in your opinion, if drawbars, the Frisco car being 122837 and the Missouri Pacific being 34745, if the Frisco drawbar were thirty-three and a half inches high and the Missouri Pacific box car drawbar twenty-nine and three-fourths inches high, if those two couplers will couple automatically by impact?

"MR. SKINKER: If the Court please, we object to that as calling for a conclusion of the witness; not a statement of any fact in the case; for the further reason that the witness is not qualified upon that, has no information of the facts in this particular case and particularly for the reason that it simply calls for a conclusion on the part of the witness.

"THE COURT: He may answer.

"To which ruling of the court defendant then and there duly excepted and still excepts.

"THE WITNESS: Not properly without adjustment."

The witness had twenty-five years' experience on locomotives and as a switchman. We think he was qualified as an expert to testify with reference to the automatic coupling of cars. The testimony was not the conclusion of the witness. In testifying he only gave his opinion about the matter. The question was a matter for expert evidence and it was proper to permit the witness to answer.

■ Defendant challenges the verdict as excessive. The instruction on the measure of damages is not challenged. It followed the Federal rule. At the time of Halbert's death he was thirty-one years of age, with an expectancy of thirty-five years. At that time his wife was twenty-six years of age, and his child four months of age. The average earning of Halbert was $150 per month. Of this amount he contributed $130 per month for the support of his wife and child. In other words, he would have earned during his expectancy about $60,000. Of this amount he would have contributed about $50,000 to his wife and child. We do not think the verdict is excessive.

The judgment should be affirmed. It is so ordered. All concur.