INDIANA TRUCK COMPANY, A CORPORATION, (PLAINTIFF) RESPONDENT, v. STANDARD ACCIDENT INSURANCE COMPANY, A CORPORATION, (DEFENDANT) APPELLANT.—89 S. W. (2d) 97.

St. Louis Court of Appeals. Opinion filed January 7, 1936.

64

*J. D. Leritz, A. E. L. Gardner* and *Merritt U. Hayden* for appellant.

*Wm. J. Becker* for respondent.

BENNICK, C.—This action, which grows out of a controversy over the payment for certain highway construction work in St. Louis County, proceeds upon the theory of money had and received. The case has to do with the question of the validity of certain assignments made by the principal contractor to a subcontractor on the job and by him in turn made over to plaintiff, the same relating to funds alleged by plaintiff to have been due and owing to the subcontractor's

assignor from St. Louis County, but paid by the latter instead to defendant, the surety for the principal contractor, in disregard of plaintiff's priorities under said assignments.

The situation is somewhat unusual in that this is the second appeal to this court in the case, although there has been but one trial of the case in the lower court. Originally, plaintiff, Indiana Truck Company, sued both Standard Accident Insurance Company, the surety on the principal contractor's bond, and St. Louis County as joint defendants. Upon a trial to a jury, a verdict was returned in favor of plaintiff, and against the insurance company, in the aggregate sum of $1,498.75, but in favor of the county. The insurance company thereupon filed its motion for a new trial complaining of the verdict rendered against it, while plaintiff correspondingly filed its motion for a new trial complaining of the verdict in favor of the county. The court overruled the insurance company's motion and purported to render final judgment against it in conformity with the verdict, but sustained plaintiff's motion for a new trial as against the county upon the ground, among others, that the verdict was against the weight of the evidence.

In such state of the record the insurance company applied for and was granted an appeal to this court, wherein, upon the submission of the case, its appeal was dismissed for the reason that the same has been prematurely taken, there having been no appealable judgment in the case so long as the case was not definitely disposed of as to the county which was still a party to the cause awaiting the new trial which the court had granted and from which order it had not appealed. [Indiana Truck Company v. Standard Accident Insurance Company (Mo. App.); 74 S. W. (2d) 486.] In the subsequent proceedings in the lower court the cause was dismissed as to the county; and the judgment against the insurance company having thereby been made final, it again took its appeal to this court, so that the case is at last brought to us under circumstances which permit us to entertain the appeal on its merits.

The material facts of the case are almost wholly uncontroverted either in the pleadings or in the evidence.

On June 21, 1927, the Vinita Construction Company entered into three separate contracts with the county, the latter acting through its duly elected and accredited representatives, whereby the construction company agreed to do, at its own proper cost and expense, all the required work on certain projects for the construction of three drives located within the territorial limits of the county at a point several miles north of the City of St. Louis, and immediately east of Riverview Gardens.

Under the terms of said contracts, which were identical save as to projects cover and the cost thereof, the county agreed to pay the

construction company in cash the aggregate sum of $2,387, less 5% of the total and final estimate for the work, as its own proportionate share of the expense of the projects, and to cause special tax bills to be issued against the property abutting on the improvements for the balance of the cost thereof.

Pursuant to such agreement, at the completion of the work, and under circumstances which will presently appear, the county paid defendant, rather than the construction company, the aggregate cash sum of $1,059.14, though it would appear that in computing the final payment due on one of the projects known as Northridge Drive, defendant was underpaid to the extent of $424. This for the reason that whereas the county had originally agreed to pay the sum of $870, less 5% of the total and final estimate, towards the cost of this particular project, in the preparation of the final settlement the figure of $446 was used by the county highway engineer, and the sum due defendant determined accordingly. Plaintiff seems to suggest in its brief that the underpayment was due to an error on the part of the engineer, although defendant's evidence was that it accepted the smaller payment because it represented all the cash the county could allow on that particular project.

One of the provisions of the contracts was that in the event of certain described delays, defaults, or failures on the part of the contractor in the matter of the beginning, prosecution or completion of the work, the county engineer should give notice in writing to the contractor and its surety of such delay, neglect, or default, specifying the same, and if, within a period of ten days thereafter, the contractor or its surety should not proceed in accordance therewith, then upon report of such delay by the engineer the county court should have full power and authority, without violating the contracts, to take the prosecution of the work out of the hands of the contractor, to appropriate or use certain of its equipment and materials, and to enter into an agreement for the completion of the contracts, all costs and charges to be deducted from moneys due the contractor.

There were further provisions of the contracts which had to do with the scope of payments and retained percentages pending completion of the work and the payment of all claims, the same being of importance only in that by virtue thereof the entire amount of cash payments due the contractor from the county was retained by the county until after the three drives had been finally completed.

Still another provision, and one of quite considerable importance in the case, was to the effect that no assignments of money due or to become due under the contracts should be recognized by the county unless such assignment was in writing, executed by the contractor, approved by the surety, and filed with the engineer, and then only subject to prior claims and liens of labor, materials, supplies, and

equipment used in, upon, in connection with, or as necessarily incident to the work provided for.

Upon the execution of said contracts between the county and the construction company, and on the same date, the construction company gave its statutory bond, with defendant as surety thereon, in a penal sum representing the total amount of the contracts, the consideration of the bond being, in effect, that if the construction company should well and truly perform all the terms of its said contracts with the county within the time mentioned therein, and should pay all lawful claims for materials furnished or labor performed in, upon, in connection with, or as necessarily incident to the construction of the highways, then the obligation should be void, but otherwise it should remain in full force and effect.

On June 25, 1927, the construction company entered into a subcontract with one Emory for the grading work to be done in connection with the three construction projects. Though the insurance company in the course of its brief expresses some little uncertainty about Emory's true status, that is, as to whether he was a subcontractor under the construction company or whether he performed his work directly for the county, actually it admitted in its answer that he was a subcontractor under the construction company, and the evidence in the case so showed. In fact the principal contracts themselves made specific provision for the letting of subcontracts with the consent of the county, though emphasizing that no such subcontract should serve to relieve the principal contractor of all its liabilities and obligations under its contracts with the county.

By April 25, 1928, Emory had either entirely or practically completed the work called for by his subcontract with the construction company, and on that date, in consideration of the work and labor so performed and in part payment therefor, the construction company executed to him three separate written assignments, each of which related to a particular one of the improvements, assigning to Emory all the construction company's right and interest in and to the cash payments due or to become due the construction company from the county under the contracts theretofore entered into between the two, and thereby authorizing and empowering Emory to receive such cash payments from the county to the extent of $1,375, and to give the county a full and complete discharge and acquittance therefor.

Each of such assignments was given over the signature of the construction company acting through its president, and in addition each of them bore on its face the written approval of defendant as surety on the bond, conformably with the requirements noted in the principal contracts having to do with assignments of money or to become due.

It was at this point that plaintiff entered the case in the course

of negotiations between it and Emory looking to the sale by it to Emory of certain motor trucks of its manufacture which he desired to use in the completion of certain construction contracts under which he was then engaged. Emory proposed to turn over to plaintiff, in part payment for his trucks, the three assignments from the construction company to him; and upon his proposal being accepted by plaintiff, under date of April 28, 1928, he placed his own assignment to plaintiff upon the reverse side of each of the three assignments from the construction company, reciting therein that for value received he thereby assigned and transferred to plaintiff all his title and interest in and to such assignments and in and to the benefits conferred thereby.

Upon the receipt of such assignments from Emory, plaintiff took them forthwith to the office of the county highway engineer for the purpose of making certain as to their validity, and while it was given to understand by the county authorities that the assignments were valid, the suggestion was made that they be nevertheless taken to defendant's office in the City of St. Louis for defendant's approval of the transaction. Plaintiff followed the suggestion, and upon inquiry of defendant whether it would be necessary that defendant, as surety on the bond, should note on the instruments the fact of its acceptance of the assignments from Emory to plaintiff, was told that the prior acceptance was sufficient. Plaintiff, of course, undoubtedly had in mind the provision in the principal contracts requiring the approval of the surety as a condition precedent to the validity of any assignment made of money due or to become due under the contracts, though whether such provision extended to reassignments of assignments already duly approved by defendant might be quite another question.

After the transaction with defendant at its office, plaintiff took its assignments back to its own office, and later caused them to be filed of record, each instrument being stamped on its face so as to show, over the signatures of the clerk of the county court and the presiding judge thereof, that it had been ordered received and filed on May 25, 1928.

Now so far as the work on the projects was concerned, it appears that as early as December 28, 1927, within six months after the execution of the contracts, the county highway engineer, acting under the powers conferred upon him by the contracts, found it necessary to give notice to the construction company and to defendant as surety on its bond that unless construction was begun within ten days with sufficient men and equipment to insure the early completion of the projects, he would certify to the county court that the projects were in default. It would seem that up to that time the only work done on the projects had been the grading or excavating

done by Emory under his subcontract with the construction company.

Defendant thereupon took the matter up with the construction company, though unavailingly, and in the summer of 1929 the construction company finally advised defendant that it had neither the men nor the equipment to do the work and that it would not be able to continue with the projects. As time went on the county continued pressing defendant for the completion of the work, the record disclosing a letter to defendant from the county highway engineer under the date of November 18, 1929, again demanding the commencement of the work, and threatening that unless this was done he would certify the fact of the default to the county court, and request the court to take the prosecution of the work out of the hands of the construction company.

The numerous details of the controversy between defendant, the county, and the construction company are of unimportance upon this appeal other than to say that on December 11, 1929, the construction company executed its written assignment to defendant, transferring and assigning to defendant all its rights, title, and interest in and to the contracts and all payments thereunder, and directing that all payments be made and all tax bills be issued to defendant. Such assignment was given as part of a contract between the construction company and defendant, but to which the county was not a party, by the terms of which defendant agreed, among other things, that any surplus of payments remaining after all expenses had been taken care of would be paid over to the construction company. All of this is of significance as tending strongly to bear out plaintiff's contention that the county at no time recognized any contractor on the job other than the construction company itself, and, in fact, the record discloses that the several payments for the work were made by the county to defendant, not as contractor, but merely as assignee of the construction company.

It seems that at some time prior to the assignment by the construction company to defendant of its rights under the contracts, the former had entered into a written agreement with one Lane for the laying of concrete in connection with the three projects. After the assignment in question, defendant engaged Lane to complete the work on its own account, which Lane did by August, 1930, all three improvements being thereafter accepted by the county, and payments in cash and tax bills made to defendant, as has been heretofore disclosed. We repeat that defendant received the sum of $1,059.14, in cash, the payments in cash being the only ones of importance, inasmuch as the assignments executed by the construction company to Emory and by him in turn reassigned to plaintiff had referred only to cash pay-

ments due or to become due the construction company from the county.

Some little time after defendant had undertaken the completion of the work, Emory presented his bill to defendant for what must have been the balance due him in the sum of $3,162.95. Actually it would seem from the final estimates for the work that the balance of Emory's bills should have been $3,259.22. But be this as it may, defendant, on February 4, 1930, paid Emory the former sum in full satisfaction and release of all claims he had against the construction company, and in consideration thereof took from him his written assignment of all his right, title, and interest in and to any and all funds and tax bills coming from the county on account of such projects, in which assignments he authorized the county to pay and deliver to defendant all sums of money or tax bills that might be due him under and by virtue of his assignments from the construction company.

Defendant insists throughout that in taking the assignments from Emory on February 4, 1930, it had no knowledge of his previous reassignments to plaintiff, though plaintiff's own evidence was of course directly to the contrary. It caused its own assignment to be filed with the county court, and in due time the county saw fit to honor defendant's assignment, and to disregard the previous assignments filed by plaintiff to the same funds, thus laying the foundation for the present action by plaintiff against defendant.

So the controversy, in a nutshell, is one where defendant became surety on the bond of the construction company on June 21, 1927; where work was thereafter done by Emory on the projects under a subcontract with the construction company; where on April 25, 1928, the construction company, in consideration of the work so performed by Emory, assigned to him its right and interest in and to the cash payments due or to become due it from the county to the extent of $1,375; where such assignments from the construction company to Emory were approved by defendant as surety on the bond; where Emory, for a valuable consideration, and with the knowledge and consent of defendant, himself reassigned such assignments to plaintiff on April 28, 1928; where plaintiff's assignments were received and filed with the county court on May 25, 1928; where defendant, upon the failure of the construction company to live up to its contracts with the county, on December 11, 1929, took over the completion of the projects, and took from the construction company an assignment of all its right, title, and interest in and to said contracts and the payments to be made thereunder; where on February 4, 1930, in consideration of certain payments made by defendant to Emory in the satisfaction of his claim for labor performed upon the projects, the latter assigned to defendant all his right, title, and in-

terest in and to all funds due from the county, and authorized the county to pay to defendant all money that might have been due him under and by virtue of the assignments from the construction company to him; where the assignment from Emory to defendant was thereupon filed with the county court; and where the county court thereafter paid to defendant, as assignee of the construction company, the sum of $1,059.14, in cash as the total cash payment due, and in so doing disregarded plaintiff's assignments covering the same fund, which assignments had been on file for some two and one-half years when the payments to defendant were made.

It is upon such facts that plaintiff has based its action for money had and received, its theory being that by virtue of the county's recognition of Emory's assignment to defendant of February 4, 1930, and the payment to defendant thereunder, all in disregard of plaintiff's rights under its assignments of April 28, 1928, which were duly filed with the county court on May 25, 1928, defendant now has in its possession and is retaining funds which rightfully belong to plaintiff, and which in equity and good conscience it should pay over to plaintiff.

Defendant's answer set up no specific theory of defense on its face, but from the several statements of its counsel in the colloquies between court and counsel it is evident that its trial theory was that the assignments from the construction company to Emory were of no force and effect, there having been nothing due the construction company from the county to be the subject of an assignment, either on April 25, 1928, the date of the assignments from the construction company to Emory, or at any other time, in view of the fact that the construction company did nothing under its contracts with the county, but abandoned the same, with the result that the work had to be done and completed by defendant to whom all payments for the work therefore rightfully belonged; that after all subcontractors and claimants for labor and materials furnished were paid as the principal contracts required, there was nothing remaining for the construction company, and therefore nothing remaining for it to assign; and that the reassignments from Emory to plaintiff were in any event invalid, in that they were not approved in writing by defendant as surety on the bond, and were not filed with the county highway engineer, all as required by the principal contracts.

In fact, by its one instruction to the jury, defendant might well be thought to have limited the issues to the sole question of whether there were at any time any cash payments due the construction company to be assigned. This for the reason that the instruction went no further than to tell the jury that if the county was not indebted to the construction company on April 25, 1928, or at any time thereafter, for work and labor furnished under its contracts, then the as-

signments from the construction company to Emory conveyed and assigned nothing to him, and plaintiff consequently acquired nothing by the reassignments to it.

Plaintiff's theory, on the other hand, was that all work done on the projects by subcontractors, in which category defendant itself fell in the matter of the completion of the projects under an agreement with the construction company to which the county was not a party was the work of the construction company itself so far as the obligation of the county to pay therefor was concerned; that the work done by Emory before the time of the assignments to him was work for which the county was primarily indebted to the construction company, even though payment therefor may not have been due at that time; that there were consequently cash payments due the construction company at the time of its assignments to Emory which were the proper subject of assignment; and that in the present retention of such funds, defendant holds money which rightfully belongs to plaintiff by virtue of its priorities under the reassignments from Emory.

The jury allowed plaintiff the sum of $1,375, the full amount sued for, which, with interest, brought the verdict to the aggregate amount of $1,498.75. Defendant's appeal from the judgment entered in conformity therewith has followed under the circumstances which we have heretofore pointed out.

Defendant insists with much earnestness that there should have been a verdict directed for it at the close of all the evidence, asserting as the basis for its point all the contentions upon which it has directly founded its defense below, together with certain other matters upon which we are not so sure that it has heretofore seen fit to place a great deal of reliance.

It argues at the outset that the reassignments from Emory to plaintiff were not approved by it, nor were they filed with the county highway engineer, all as required by the contracts between the construction company and the county as conditions precedent to their validity.

As regards the matter of its approval of the reassignments to plaintiff, defendant's present contention comes in the face of plaintiff's positive evidence to the effect that the assignments to it from Emory were taken by plaintiff to defendant's office, and were there approved by the latter's officers in charge. It is true that defendant's approval of the reassignments to plaintiff was not indorsed upon the instruments in writing, but the answer is that the contracts did not so require. It will be recalled that defendant's approval of the assignments from the construction company, its principal, to Emory, the latter's subcontractor, had been indorsed upon the face of the instruments; and after all, the principal contracts were necessarily

concerned only with money due or to become due the construction company thereunder, and the provisions of the contracts having to do with the matter of assignments were specifically limited by their own terms to assignments made and executed by the contractor, which was the construction company. Consequently, if the assignments to Emory were valid, he thereupon acquired something of value as evidenced by such assignments, and under such circumstances he could thereafter reassign and transfer the same to plaintiff, or for that matter to any one he chose, without in any way prejudicing the rights of defendant as surety on the bond.

The contracts did provide, as defendant points out, that for assignments of money due or to become due thereunder to be recognized by the county it was necessary that the same be filed with the engineer, but this requirement was likewise complied with by plaintiff. Upon its acquisition of the assignments from Emory, plaintiff took them forthwith to the engineer, and it was at his express directions that they were then taken to defendant for its approval, and thence to the county court, which was the engineer's principal in the matter of the construction of the projects, where the assignments were ordered received and filed.

The controversy is therefore reduced to the question of the validity of the assignments from the construction company to Emory, for it they were valid as originally executed, then Emory's reassignment of them to plaintiff was effectual as the latter now contends. As to this, defendant argues that the assignments from the construction company to Emory were invalid upon the theory that no money was ever due or became due the construction company from the county, so that the construction company at no time had anything of value to assign. Consequently defendant insists that inasmuch as Emory, under its theory of the case, acquired nothing under his assignments from the construction company, he had nothing to pass on and transfer to plaintiff by way of reassignment, and plaintiff therefore could have acquired no right or interest in any payments due or to become due from the county.

We think defendant's argument in this respect is clearly erroneous. The county's obligation to pay for the work, even though done by a subcontractor, was one which it owed the construction company as the principal contractor, which, in turn, was then indebted to its own subcontractor therefor by virtue of the terms and provisions of the subcontract. Consequently the moment that Emory's work had been performed the county became indebted for it to the construction company, and the construction company from that moment had something valuable to assign in that the county's indebtedness had then accrued, even though payment of such indebtedness may not have

been due until some time thereafter. [Service Purchasing Co. v. Brennan, 226 Mo. App. 110, 42 S. W. (2d) 39.]

In fact the whole course of the transaction shows abundantly that the county never recognized any one but the construction company as the contractor with which it was to deal. Even the payments eventually made to defendant were made to it as the assignee of the construction company, thus indicating that even as between the county and defendant itself, both parties accepted the view that whatever payments were due from the county were due to the construction company, and that payments were to be made to defendant as the assignee of the construction company only because they were payments due the construction company which could be assigned. It is to be borne in mind that while the county repeatedly threatened to declare the construction company in default, it never did so, but continued to treat it as the contractor; and that while defendant, in fact, completed the work, it did so only by virtue of a contract entered into between it and the construction company to which the county was not a party. We repeat, therefore, that all payments due from the county were due from it to the construction company so far as the county was concerned, and that consequently the sums due the construction company were in turn subject to be assigned by it, provided only that the provisions of the contracts having to do with the making of assignments were first duly complied with.

Defendant makes the further suggestion, in which we do not believe that it is very serious, that in any event, before any money was payable from the county, both the construction company and Emory had assigned all of their respective interest in and to any such money back to defendant, so that plaintiff's claim was thereby rendered unavailing. Manifestly, if the assignments from the construction company to Emory were valid, and if the reassignments from Emory to plaintiff were valid, and if plaintiff's reassignments were thereafter filed in due course with the county court, all of which occurred more than one year and eight months before the making of the assignment from Emory to defendant, then Emory's subsequent assignment to defendant, regardless of what may have been intended as between him and defendant, could not have served to affect and destroy the rights which had theretofore become vested in plaintiff by virtue of its reassignments duly received and filed as indicated.

Finally defendant makes the point that aside from all other considerations, the assignments from the construction company to Emory were wholly void or at least unenforceable as against the prior and superior equities of defendant arising by virtue of its contract of suretyship, by which, on account of the failure of the construction company to complete the work, it found itself in a position where it was compelled to take over the performance of the obligations of

the construction company under its contracts with the county, and in so doing to sustain a loss.

There is a line of decisions, of which Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, is the leading case, which accord a right of equitable subrogation to the surety on a contractor's bond when the surety has completed the work of the defaulting contractor, which right of subrogation arises from and relates back to the time of the inception of the surety's obligation and is superior to the equity, if any, of a third party who has loaned money to the contractor following the execution of his contract, even though the money loaned has been used to pay for labor and materials employed in the prosecution of the work. This upon the theory that the third party loaning money to the contractor acts as a mere volunteer on the faith of a presumed agreement and of supposed rights thereunder, all following the inception of the suretyship in point of time, while the surety in making his payments discharges a positive obligation for the performance of which he was at all times bound under the contract of his suretyship which entered into and formed a part of the principal contract itself.

The doctrine so stated is obviously a salutary one and founded upon established principles of right and equity, but there are two principal reasons why it can have no application to the facts at hand. In the first place, Emory does not occupy the status of a mere volunteer who has dealings with the principal contractor and who is to be charged with knowledge of all the rights and equities arising under the contract, but instead he was a subcontractor, who performed labor on the projects, and whose right to be paid therefor, as he was by the assignments in question, was vouchsafed to him by the very contracts under which defendant now claims its right of equitable subrogation. In fact, one of defendant's obligations under its bond was to see to it that the claims of all such parties as Emory would be accorded a preferential status. But beyond all this, the contracts themselves permitted and contemplated the making of assignments by the contractor upon certain stated conditions, and in approving the assignments which were made by the construction company pursuant to the terms of its contracts, defendant clearly waived any right it might otherwise have had to have claimed a priority over the same. Moreover, it is significant that so far as the assignments from the construction company to Emory were concerned defendant sustained no loss, since in making its final settlement with Emory it paid him a sum which was undoubtedly intended to represent only the balance of his claim after the same had been satisfied to the extent covered by the assignments theretofore made over to him by the construction company.

This brings us then to the question of whether plaintiff, in pro-

ceeding upon the theory of money had and received, has selected the proper remedy for the assertion of his cause of action. Of this we think there can be no reasonable room for doubt, though defendant argues at some length to the contrary. The very basis of an action for money had and received is that the defendant has received money which rightfully belongs to the plaintiff, and which in equity and good conscience it ought to pay over to him. Moreover the action is a flexible one, with the tendency being to widen rather than to restrict its scope, so much so, in fact, that the court is permitted to turn even to equitable principles in order to reach a just conclusion upon the facts before it. [Whitecotton v. Wilson (Mo. App.), 197 S. W. 168; Federal Land Bank of St. Louis v. International Life Insurance Co. (Mo. App.), 260 S. W. 822; Montgomery v. College Mound Security Trust Co. (Mo. App.), 10 S. W. (2d) 971; Doerner v. St. Louis Crematory & Mausoleum Co. (Mo. App.), 80 S. W. (2d) 721.]

Even in the light of the tests which are argued for by defendant as the essentials of an action for money had and received, the case at hand seems amply to meet all the requirements. Under plaintiff's theory of the case, and as its proof disclosed, its equities under its assignments were prior and superior to the equity of defendant under its subsequent assignment, so that in accepting payment from the county, defendant has received and is retaining money which rightfully should have gone to plaintiff under and by virtue of its assignments duly executed to it and on file with the county court. It follows, therefore, that plaintiff's case was one for the determination of the jury; and the court ruled properly in denying defendant's request for a directed verdict in its favor.

There are certain objections to the instructions given for plaintiff, such objections having principally to do with questions which have been heretofore discussed and determined adversely to defendant's contentions. In none of the respects noted by defendant were the instructions prejudicial to its rights, such inaccuracies as appeared relating to matters that could not reasonably be calculated to have misled the jury. Likewise there are certain other points assigned as error which have either been abandoned by defendant in the course of its brief and argument, or else have been sufficiently covered by what we have said in connection with the question raised on the demurrer to the evidence.

Finally we come to the point that the verdict is excessive, and we think this point is well taken. Though plaintiff's assignments were for the sum of $1,375, which sum, incidentally, with interest thereon, the jury awarded to plaintiff as the measure of its recovery, it appears that defendant actually received from the county only the sum of $1,059.14 in cash payments to which plaintiff's assignments

could have been applied. Manifestly in this action for money had and received plaintiff is not entitled to recover more from defendant than defendant has received and is holding to the use of plaintiff. Consequently, the verdict is obviously excessive in so far as it purports to award plaintiff any sum over and above $1,059.14, with interest, an excess which we have calculated at $344.33, and which should be remitted by plaintiff as a condition to the entry of a judgment in its favor in the present status of the case.

Accordingly, the Commissioner recommends that if plaintiff will within ten days remit the sum of $344.33, the judgment of the circuit court be reversed, and the cause remanded with directions that a new judgment be entered in favor of plaintiff, and against defendant, in the sum of $1,154.42, with interest thereon at the rate of six per cent. per annum from December 3, 1934, the date of the finality of the judgment appealed from; and that otherwise the judgment be reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions as recommended by the Commissioner, provided plaintiff enters a *remittitur* of $344.33 within ten days; otherwise the judgment is reversed, and the cause remanded for a new trial. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.*; concur.