**HILDERBRAND v. ANDERSON.**

No. 7194.

Springfield Court of Appeals.

Missouri.

July 8, 1954.

J. Grant Frye, Cape Girardeau, for appellant.

Strom & Spradling, Cape Girardeau, for respondent.

## STONE, Justice.

Upon trial of this cause, the jury returned verdicts against plaintiff on his petition, against defendant on his counterclaim, and for plaintiff in the sum of $96.90 on his "reply claim". Thereafter, plaintiff's motion for new trial on his petition and defendant's motion for new trial on his counterclaim were overruled, defendant's motion to set aside the verdict and judgment for $96.90 on plaintiff's "reply claim" and to enter judgment thereon in favor of defendant (under Section 510.-380) was sustained without specification of the ground or grounds for such action, and defendant's alternative motion for new trial on plaintiff's "reply claim" was overruled. (All statutory references herein are to RSMo 1949, V.A.M.S.) The case is before us on plaintiff's appeal from the adverse judgment thus entered against him on his petition and his "reply claim".

In substance, plaintiff's petition charged that, on June 24, 1951, plaintiff owned a 1949 Plymouth sedan; that "defendant promised and agreed to take such automobile to Oliver Geil Motor Sales, Inc., * * in Jerseyville Illinois and trade it to such motor company as a down payment of not less than $1200.00 on the purchase price of a new 1951 Plymouth sedan"; that plaintiff assigned in blank the Missouri certificate of title to the 1949 Plymouth automobile, "it being agreed that defendant would * * * insert the name of Oliver Geil Motor Sales therein *if* the defendant was able to make such a trade"; that on June 25, 1951, "defendant caused such blank 'Assignment of Title' to be filled out so as to make defendant the assignee"; and that thereafter, upon defendant's application, a Missouri certificate of title was issued showing ownership of the automobile in him.

Plaintiff's petition further alleged that, on June 25, 1951, defendant traded the 1949 Plymouth automobile to Oliver Geil Motor Sales "as a down payment figure of $1111.48" on a new 1951 Plymouth automobile, for which an Illinois certificate of title subsequently was issued to defendant; that the unpaid balance of the purchase price of the 1951 Plymouth automobile was $972.75 (which, as the evidence showed, was "financed" by note and chattel mortgage executed by defendant); that defendant brought the 1951 Plymouth automobile to Lutesville, Missouri (where both plaintiff and defendant resided), "refused to allow plaintiff to have the same, and after about three weeks, disclosed to plaintiff that the title thereto was in defendant's name"; and that, on July 30, 1951, defendant "reassigned and transferred" the 1951 Plymouth automobile to Oliver Geil Motor Sales "and received, over and above the balance due the finance company * * * $792.10, which sum he kept and retained". Plaintiff's petition then concluded as follows:

"13. The acts and conduct of defendant were all pursuant to a scheme to cheat and defraud plaintiff of his 1949 Plymouth automobile, * * *

and all the foregoing representations that defendant made * * * were false and pursuant to such scheme to cheat and defraud plaintiff.

"14. On account of the wrongful acts and conduct of defendant, plaintiff has suffered actual damages of $1200.00.

"Wherefore, plaintiff prays judgment against defendant for $1200.00 actual damages and for $1000.00 punitive damages."

In his amended answer, defendant averred that he had purchased the 1949 Plymouth automobile from plaintiff for $1000.00 which had been paid in full prior to assignment of the title by plaintiff on June 24, 1951, pleaded estoppel and ratification as affirmative defenses, and attacked the legal sufficiency of plaintiff's petition "to state a claim for fraud and deceit".

At the outset of the trial, defendant's counsel moved to dismiss plaintiff's petition "as not stating a cause of action in fraud and deceit". This motion was overruled and the trial proceeded without any comment by plaintiff's counsel as to the nature of his alleged cause of action. After the close of the evidence, plaintiff's counsel told the court that "the plaintiff believes it has offered sufficient evidence to warrant going to the jury on the ground of fraud or on the ground of breach of contract, but the plaintiff desires to treat as surplusage that part of the petition which might be construed as permitting the fraud theory or the contract theory, and desires to go to the jury on the petition solely on the matter of what might be called 'money had and received' and will treat all other allegations of the petition as surplusage, and for that reason plaintiff objects to the instructions which the court has indicated it was going to give for the defendant as not being responsive to the issues which

are not (sic) laid on the petition and which are contradictory to the instructions of plaintiff on the petition * * *." Defendant's counsel immediately objected that "the introduction of plaintiff's instruction on the theory mentioned is a departure and comes as a surprise to the defendant, both as to the introduction of evidence and the production of witnesses and is contrary to the allegations of his petition." The court thereafter gave plaintiff's verdict-directing Instruction No. 1 submitting the case on plaintiff's petition on the theory of money had and received, and at the same time gave defendant's Instructions 3, 4 and 5 on the theory of fraud and deceit.

Since plaintiff's only complaints (upon appeal from the adverse judgment on his petition) are that defendant's Instructions 3, 4 and 5 submitted the "abandoned issues" of fraud and deceit and conflicted with his Instruction 1, the decisive question is as to whether his action was for money had and received (in which event an instruction submitting his case on that theory was proper and error was committed in giving conflicting instructions on the theory of fraud and deceit [1]), or was for fraud and deceit (in which event plaintiff's Instruction 1 on the theory of money had and received should not have been given and plaintiff cannot complain because of conflict between that instruction and defendant's Instructions 3, 4 and 5 given on the correct theory of fraud and deceit [2]).

■ As urged upon us by plaintiff, we recognize that the action for money had and received has always been favored in the law; that the tendency is to widen its scope; that it is a flexible form of action, levying tribute on equitable, as well as strictly legal, doctrines; and, that the action lies where the defendant has received or obtained possession of money or its equivalent belonging to another which in equity and good conscience, ex aequo et

1. See cases listed in Vol. 27, Missouri Digest, under "Trial", ⊚⟹243, "Inconsistent or Contradictory Instructions".

2. Krelitz v. Calcaterra, Mo., 33 S.W.2d 909, 911(3); Simmons v. Wells, 323 Mo.

882, 20 S.W.2d 659, 662(6); Montana v. Nenert, Mo.App., 226 S.W.2d 394, 401 (11); F. A. Sander Real Estate & Inv. Co. v. Warner, Mo.App., 205 S.W.2d 283, 288(10).

bono, he ought not to retain[3]. However, the question for determination is *not* whether plaintiff *might* have brought an action for money had and received, but whether he *did,* in fact, sue on that theory.

■ Under our Civil Code, "the pleadings continue to be of the greatest utility in defining the issues of a case. And it is not to be understood that the petition in stating plaintiff's claim has lost its usefulness as a means of arriving at the primary objectives of the Code. On the contrary, * * * the petition is to be of the same usefulness as before, or of more usefulness than before, in plainly stating the facts upon which the plaintiff relies as showing that he is entitled to recover." Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W. 2d 25, 28. See also Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, 230(2); Holland v. City of St. Louis, Mo., 262 S.W.2d 1, 3. We are enjoined that "all pleadings shall be so construed as to do substantial justice" (Section 509.250; DeVault v. Truman, 354 Mo. 1193, 194 S.W.2d 29, 32); and, even as formerly the parties were "to be protected by the court when it construes pleadings to secure them against being misled" [Quigley v. King, 182 Mo.App. 196, 168 S.W. 285, 289(4)], under the present Civil Code pleadings are not to be used to conceal issues and to ambush the adverse party [Gerber v. Schutte Inv. Co., supra, 194 S.W.2d loc. cit. 28(3); Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473, 475(2)]. "* * (P)laintiff should never be permitted to turn the generality of the count (for money had and received) into a surprise upon the defendant by deserting the ground which the defendant is let to believe is the only

matter to be tried, and resorting to another of which he cannot be apprised by the declaration and may have no suspicion". 4 Am.Jur., Assumpsit, Sec. 20, p. 511. It is still true, as it always has been[4] in our practice, that "plaintiff may not sue upon one cause of action and recover upon another, or recover upon an inconsistent theory without notice to the opposing party." Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684, 688(6).

■ Where, as in the instant case, "it becomes necessary to determine the nature of the cause, that determination is based upon construction of the complaint." Williams v. Illinois Cent. R. Co., 360 Mo. 501, 229 S.W.2d 1, 2(3), 20 A.L.R.2d 322. "The form of the action is determined by the substance of the petition." Webster v. Sterling Finance Co., 351 Mo. 754, 173 S.W.2d 928, 931. See also White v. Scarritt, 341 Mo. 1004, 111 S.W.2d 18, 21(4); 1 C.J.S., Actions, § 46, page 1100. We are not unmindful of the fact that, as plaintiff points out, it is proper, in an action for money had and received, to set forth the facts creating liability, and that in some instances averments as to fraud and deceit or commission of a tort have been treated as harmless surplusage [Tabor v. Universal Exploration Co., 8 Cir., 48 F.2d 1047, 1052(4); Sidebottom v. Sidebottom, 215 Mo.App. 513, 255 S.W. 353, 356(2)], particularly where the case was tried and submitted by both parties on the theory of money had and received [Vaught v. Hez Brown Mortgage Co., Mo.App., 289 S.W. 655, 657; Walton v. Chalmers, Mo.App., 205 S.W. 90, 92(3)], or where "it was necessary to plead the fraud and deceit in order to state a good cause of action"

---

**3.** In re De Gheest's Estate, 360 Mo. 1002, 232 S.W.2d 378, 382(9, 10); Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504, 510(4); Webster v. Sterling Finance Co., 351 Mo. 754, 173 S.W.2d 928, 931 (5); Nodaway County v. Kidder, 344 Mo. 795, 129 S.W.2d 857, 861(13, 14); Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, 94 S.W. 527, 535(11); Indiana Truck Co. v. Standard Accident Ins. Co., 232 Mo.App. 63, 89 S.W.2d 97, 105(6, 7); Whitecotton v. Wilson, Mo.

App., 197 S.W. 168, 170(3, 4); Houts v. Dunham, 162 Mo.App. 477, 142 S.W. 806, 808–809.

**4.** Rishel v. Kansas City Public Service Co., Mo., 129 S.W.2d 851, 855(6); Henry County v. Citizens' Bank of Windsor, 208 Mo. 209, 106 S.W. 622, 626(2), 14 L.R.A.,N.S., 1052; Chitty v. St. Louis, I. M. & S. Ry. Co., 148 Mo. 64, 49 S.W. 868, 870; Griswold v. Haas, 145 Mo.App. 578, 122 S.W. 781, 783–784(4).

[Koontz v. Whitaker, Mo.App., 111 S.W. 2d 197, 200(5)], or where such averments were a matter of inducement, "explanatory and incidental, not of the essence of the case stated" (Crigler v. Duncan, 121 Mo. App. 381, 99 S.W. 61, 64). But, in the final analysis, the question becomes what is the gravamen of the complaint and the gist of the action, in the resolution of which we "cannot resort to mere guesswork or speculation to determine whether a particular cause of action is pleaded" and we must be concerned by what the petition alleges or fails to allege, rather than by what counsel may say. State ex rel. Hendrix v. American Surety Co. of New York, Mo.App., 176 S.W.2d 67, 69(1), 70(6).

■ Although our courts have on several occasions "loosely stated the prayer is no part of the petition"—a thought "more accurately expressed by saying the relief prayed for is no part of plaintiff's cause of action" [Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24, 26(2, 3)]—it is clear that, "in determining the cause of action intended to be pleaded under the new code, we may consider the facts pleaded and relief sought" [Kemp v. Woods, supra, 251 S.W. 2d loc. cit. 688(4)], and that, as has always been true [O'Donnell v. Baltimore & O. R. Co., 324 Mo. 1097, 26 S.W.2d 929, 935(17), and cases there cited; State ex rel. Brinkman v. McElhinney, Mo., 216 S.W. 521, 524(1)], "when the allegations of fact are ambiguous or susceptible of two constructions, the prayer may be looked to for the purpose of ascertaining the intention of the pleader" [St. Louis 221 Club v. Melbourne Hotel Corp., Mo.App., 227 S.W.2d 764, 770(16), and cases there cited]. This is the general rule (1 C.J.S., Actions, § 46, pages 1100–1101) recognized and applied in Tabor v. Universal Exploration Co., supra, 48 F.2d loc. cit. 1051, upon which plaintiff's counsel places primary reliance as "probably the best Missouri case."

■ An action for fraud and deceit sounds in tort and, upon adequate pleadings and proof, might permit an award of punitive damages. Kearns v. Sparks, Mo. App., 260 S.W.2d 353, 361(20); Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1088(11). On the other hand, although an action for money had and received is not dependent upon an express promise, recovery therein is based on a promise implied by law and always sounds in contract [5]; and, "(i)n an action for money had and received plaintiff waives all torts, trespasses and damages." White v. McCoy Land Co., Mo.App., 101 S.W. 2d 763, 765(3). It has been said repeatedly that (excepting perhaps within certain narrow exceptions not here important) punitive damages are not recoverable in an action on contract [6], and this has been held specifically in an action for money had and received. Watkins v. Hovey, D.C.Mo., 88 F.Supp. 478. Turning to plaintiff's petition in the instant case, we observe that, after charging that "the acts and conduct of defendant were all pursuant to a scheme to cheat and defraud plaintiff of his 1949 Plymouth automobile * * * and all the foregoing representations that defendant made * * * were false and pursuant to such scheme to cheat and defraud plaintiff," he prayed judgment "for $1200.00 actual damages and for $1000.00 punitive damages," thus evidencing an obvious de-

5. Bisesi v. Farm & Home Savings & Loan Ass'n of Missouri, 231 Mo.App. 897, 78 S.W.2d 871, 873(4); Raven Red Ash Coal Co. v. Ball, 185 Va. 534, 39 S.E.2d 231, 234(3), 167 A.L.R. 785; Gottfried v. Gottfried, 269 App.Div. 413, 56 N.Y.S. 2d 50, 56(6); 58 C.J.S., Money Received, § 1, pages 908–911; 4 Am.Jur., Assumpsit, Sec. 20, p. 509.

6. Trammell v. Vaughan, 158 Mo. 214, 59 S.W. 79, 82(3), 51 L.R.A. 854; Barton v. Farmers Ins. Exchange, Mo.App., 255 S.W.2d 451, 457(8); Thomas v. Sterling Finance Co., Mo.App., 180 S.W.2d 788, 792; Zweifel v. Lee-Schermen Realty Co., Mo.App., 173 S.W.2d 690, 701(10); Norris v. Letchworth, 167 Mo.App. 553, 152 S.W. 421, 423(3); Trout v. Watkins Livery & Undertaking Co., 148 Mo.App. 621, 130 S.W. 136, 140(4); Peitzman v. City of Illmo, 8 Cir., 141 F.2d 956, 962 (11); Restatement of the Law of Contracts, Vol. 1, Sec. 342, p. 561; 25 C.J.S., Damages, § 120, page 716; 58 C.J.S., Money Received, § 33(a), page 947; 15 Am.Jur., Damages, Sec. 273, pp. 708–709.

sire and purpose to recover on a claim ex delicto for fraud and deceit rather than on a claim ex contractu for money had and received.

In our view of the case, it is unnecessary to pass upon defendant's contention that plaintiff's petition did not state a cause of action either for fraud and deceit or for money had and received, and it may be conceded (without however so holding) that plaintiff *might* have waived the tort and sued in assumpsit for money had and received. However, careful consideration of plaintiff's petition and of the entire record in this case, with proper respect for the statutory requirement that "all pleadings shall be so construed as to do substantial justice", Section 509.250, impels the conclusion that, irrespective of what plaintiff *might* have done, he undertook to sue for fraud and deceit, issue was joined on that theory, and trial proceeded on that basis until plaintiff's counsel, after close of the evidence, first declared his desire to "treat all other allegations of the petition as surplusage" and submit his case on the theory of money had and received. That plaintiff's petition referred to an oral "agreement" with defendant is not inconsistent with the conclusion that the petition sounded in tort[7], for, as was well said in an early case, "(c)ontractual ingredients most generally enter into deceit." Lambert v. Jones, 91 Mo.App. 288, 291. "* * * [I]f it appears that the gravamen or gist of the complaint is the fraud and deceit, the action is in tort, although the complaint contains allegations of a contract, such as by way of inducement." 1 C.J.S., Actions, § 49(b), pages 1110, 1111.

Having concluded that, in the instant case, the gravamen or gist of plaintiff's complaint was the alleged "scheme to cheat and defraud plaintiff of his 1949 Plymouth automobile" and that plaintiff sought in his petition to state a claim ex delicto for fraud and deceit, it necessarily follows that plaintiff's verdict-directing Instruction 1 submitting his case ex contractu on the theory of money had and received should not have been given, and that plaintiff, having injected a false legal issue into the case and having been responsible for any confusion thereby engendered, will not be heard to complain that there was conflict between his Instruction 1 and defendant's Instructions 3, 4 and 5 drafted on the proper theory. The judgment for defendant on plaintiff's petition should be affirmed.

Plaintiff's complaint that the verdict and judgment for $96.90 on his "reply claim" should not have been set aside by the trial court requires a brief review of the pertinent pleadings. When defendant answered on September 18, 1951, he also filed a counterclaim in which he alleged that, as surety for plaintiff, he signed a note to Bollinger County Bank of Lutesville, Missouri, which he was obliged to pay on November 19, 1948, by reason of which defendant prayed judgment against plaintiff for $312.00 and interest. On September 25, 1951, plaintiff filed his "Reply to Counterclaim" in which he alleged that, during October, 1947, he had loaned $700.00 in cash to defendant; that thereafter, during October, 1947, defendant, as surety for plaintiff, executed a note for $300.00 to Bollinger County Bank, in discharge of which defendant subsequently paid $312.00 (including $12.00 interest) for which "there was a credit given by plaintiff to defendant of $312.00 on the $700.00 and interest that defendant then owed plaintiff"; that thereafter, during April, 1948, defendant, as surety for plaintiff, executed another note for $300.00 to Bollinger County Bank, in discharge of which defendant subsequently paid $312.00 for which "there was a further credit given by plaintiff to defend-

7. See and compare Ellyson v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 714, 716(2); Hunter v. Sloan, 195 Mo. App. 69, 190 S.W. 57, 59(3); Corder v. O'Neill, 176 Mo. 401, 75 S.W. 764, 774 (2, 3); Traber v. Hicks, 131 Mo. 180, 32 S.W. 1145, 1148(1); Shinnabarger v. Shelton & Lane, 41 Mo.App. 147, 155–156(1); Peitzman v. City of Illmo, supra, 141 F.2d loc. cit. 961(10); Tamm v. Ford Motor Co., 8 Cir., 80 F.2d 723, 729(6).

ant of $312.00 on the balance of the $700.00 and interest that defendant then owed plaintiff"; and that "after such credits * * * and considering interest on the $700.00 and balances thereof * * *, defendant still owes plaintiff $128.89 balance." At the same time, "Plaintiff's Counterclaim" was filed in which plaintiff realleged "all the facts set out" in his reply to defendant's counterclaim and prayed judgment against defendant in the sum of $128.89.

On January 2, 1952, defendant filed his "Answer and Replication to Plaintiff's Reply and Counterclaim" and also "First Amended Answer and Counterclaim of Defendant". On January 3, 1952, plaintiff filed his "Reply and Answer" in which he denied all "new matter set out in defendant's First Amended Answer" and "for his Answer to defendant's Counterclaim appended to defendant's First Amended Answer, * * * (realleged) all the matters set out in his Reply to Counterclaim heretofore filed to the original Answer and Counterclaim of Defendant."

Defendant urges that the action of the trial court in setting aside the judgment for $96.90 on plaintiff's "reply claim" should be sustained for two reasons, i. e., (1) because plaintiff abandoned his counterclaim (which, apparently to distinguish it from *defendant's* counterclaim, was referred to as plaintiff's "reply claim" in the instructions, verdicts and judgment) by reason of the fact that, after defendant filed his "First Amended Answer and Counterclaim" on January 2, 1952, plaintiff filed his "Reply and Answer" on January 3, 1952, but did not *refile* "Plaintiff's Counterclaim", which had been filed on September 25, 1951, and (2) because "recoupment and offset is available defensively only to reduce or satisfy the opposing party's claim and (permits) of no affirmative judgments."

Although it is true that a prior pleading is abandoned by the filing of an amended one [Weir v. Brune, Mo., 256 S.W.2d 810, 811(1), and cases there cited], the amended pleading relates back to the time of the filing of the original pleading, if the claim or defense stated in the amended pleading is the same as that stated in the original one [8]. Since defendant's refiled counterclaim differed from his counterclaim, as initially stated and filed, only superficially in form and language and not at all in substance and legal effect, the refiled counterclaim related back to September 18, 1951, the date on which the counterclaim was filed originally, and it would not have been essential for plaintiff to have refiled his "Reply to Counterclaim" which had been filed on September 25, 1951 [9]. No reason is suggested why "Plaintiff's Counterclaim" timely filed on the same date, i. e., on September 25, 1951, should have occupied any different or less favored status, and we have no hesitancy in holding that there likewise was no legal necessity for the refiling of plaintiff's counterclaim.

In this connection, we note also that, on January 2, 1952, defendant had recognized and joined issue on plaintiff's counterclaim by filing "Answer and Replication to Plaintiff's Reply and Counterclaim", a separate pleading which was never amended, abandoned or withdrawn. We think it unimportant what nomenclature was employed in the captions of the several pleadings filed by the respective parties, cf. Section 509.090, or was used by plaintiff in referring to his counterclaim or "reply claim". The important fact is that, in our opinion,

8. State ex rel. Fechtling v. Rose, 239 Mo. App. 178, 189 S.W.2d 425, 428(4); O'Neil v. O'Neil, Mo.App., 264 S.W. 61, 66(13); State ex rel. Christine v. Taylor, 200 Mo. App. 333, 206 S.W. 247, 250(4); Philip Gruner & Bros. Lumber Co. v. Hartshorn-Barber Realty & Building Co., 171 Mo.App. 614, 154 S.W. 846, 851(4); Smith v. St. Louis Transit Co., 133 Mo. App. 202, 113 S.W. 216, 217(2).

9. Trotter v. Carter, 353 Mo. 708, 183 S.W.2d 898, 901(2); Scheerer v. Waltner, 225 Mo.App. 837, 29 S.W.2d 193, 195 (5); State ex rel. Christine v. Taylor, supra, 206 S.W. loc. cit. 249–250(3); Campbell v. Boyers, 241 Mo. 421, 145 S.W. 807, 809(4); Bremen Bank v. Umrath, 55 Mo.App. 43, 50(4); Parks v. Thompson, 363 Mo. 791, 253 S.W.2d 796, 798.

issue was joined and trial was had on the claim for $312.00 stated in defendant's counterclaim filed on September 18, 1951, and likewise on the claim for $128.89 stated in plaintiff's counterclaim filed on September 25, 1951. Consult Section 509.500. We reject defendant's contention that the "reply claim" had been "abandoned", in the paraphrased language of State ex rel. Christine v. Taylor, 200 Mo.App. 333, 206 S.W. 247, 249–250: "There is not a word of the record here to show that (plaintiff's counterclaim) was ever withdrawn. All that could possibly be said to be omitted was a request that (plaintiff's counterclaim) be considered as refiled. Because no such request was made and (plaintiff's counterclaim) not specifically refiled, it does not follow that it was abandoned. To hold that it was, is untenable; no such result followed."

█ Defendant's contention that plaintiff's counterclaim or "reply claim" was available defensively but did not permit of an affirmative judgment against defendant is no more tenable. Although, prior to adoption of our present Civil Code, the general rule was that a plaintiff could not recover on a cause of action stated only in his reply, and not in his petition, and that likewise he could not "piece out a cause of action" in his reply [10], it is not at all clear that, even under our prior practice, plaintiff's counterclaim could not have been maintained under the circumstances of the instant case.[11] But, whatever doubt might have existed on this subject in earlier times has been resolved and removed by our present Civil Code and judicial interpretation thereof. Section 506.010; Carr, Missouri Civil Procedure, Vol. 1, Sec. 4; Parks v. Thompson, Mo., 253 S.W.2d 796, 798(2); Gerber v. Schutte Inv. Co., supra, 194 S.W.2d loc. cit. 27. The Code "is intended to permit, and under certain conditions to require, the joining of all claims existing between the parties in one action. *There may be an unlimited joinder of claims between the same parties.*" White v. Sievers, 359 Mo. 145, 221 S.W.2d 118, 121(1, 2). That the filing of a counterclaim in plaintiff's reply is contemplated by the Code is plainly apparent from the language of Section 509.060: "The *plaintiff* in his petition or *in a reply setting forth a counterclaim* * * * may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against *an opposing party.*" Consult also Section 509.420; Supreme Court Rule 3.16, 42 V.A.M.S.; Carr, Missouri Civil Procedure, Vol. 1, Sec. 166. In White v. Sievers, supra, 221 S.W.2d loc. cit. 123, the cause was remanded that "plaintiff in this case * * * be permitted if he wishes to plead *either by petition or reply* his six counts in damages". We think that there is no question but that plaintiff's counterclaim in the instant case permitted of an affirmative judgment against defendant [12].

10. State ex rel. Reed v. Harris, 348 Mo. 426 (banc), 153 S.W.2d 834, 836(2); Webster v. Joplin Water Works Co., 352 Mo. 327, 177 S.W.2d 447, 454(13); Nemours v. City of Clayton, 351 Mo. 317, 172 S.W.2d 937, 939(10); Talbert v. Chicago, R. I. & P. Ry. Co., 314 Mo. 352, 284 S.W. 499, 502(1); Hammons v. Hammons, 300 Mo. 144, 253 S.W. 1053, 1056(2); Daniel v. Pryor, Mo., 227 S.W. 102, 105(5); Mathieson v. St. Louis & S. F. Ry. Co., 219 Mo. 542, 118 S.W. 9, 12(8); Delametter v. Home Ins. Co., 233 Mo.App. 645, 126 S.W.2d 262, 269(7); Kent v. City of Trenton, Mo.App., 48 S.W.2d 571, 574–575(2).

11. See and compare Clark Real Estate Co. v. Old Trails Inv. Co., 335 Mo. 1237, 76 S.W.2d 388, 392–393(7, 8); Morrison Mfg. Co. v. Roach & Green, 104 Mo. App. 632, 78 S.W. 644, 645(1); Caruthersville Plumbing & Auto Co. v. Lloyd, Mo.App., 240 S.W. 838, 839(5); Annotation 42 A.L.R. 564, 565–566.

12. This construction of our Code is in harmony with the overwhelming weight of authority construing the corresponding provisions, Rules 13(a), 13(b) and 18(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Maison de Marchands, etc., v. New York Silicate Book Slate Co., D.C.N.Y., 13 F.R.D. 15; Mid-States Products Co. v. Commodity Credit Corp., D.C.Ill., 10 F.R.D. 592, affirmed on merits, 7 Cir., 196 F.2d 416; Bethlehem Fabricators, Inc., v. John Bowen Co., D.C.Mass., 1 F.R.D. 274; Downey v. Palmer, D.C.N.Y., 31 F.Supp. 83; Warren v. Indian Refining Co., D.C.Ind., 30 F.Supp. 281; Barron & Holtzoff, Fed-

The judgment for defendant on plaintiff's petition is affirmed, but the order sustaining defendant's after-trial motion to set aside the verdict and judgment for plaintiff in the sum of $96.90 on his "reply claim" is reversed and the cause is remanded with directions to reinstate that verdict and judgment as of the date of trial.

McDOWELL, P. J., concurs.

BLAIR, J., concurs in result.

eral Practice and Procedure, Vol. 1, Sec. 391, p. 777; Id., Sec. 396, p. 806; Cyclopedia of Federal Procedure (3rd Ed.) Vol. 6, Sec. 16.07, p. 13. Contra, Cornell v. Chase Brass & Copper Co., D.C.N.Y., 48 F.Supp. 979, 980.